**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Louis Agre, William Ewing, | ) | |
| Floyd Montgomery, Joy Montgomery, | ) | |
| and Rayman Solomon, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 17-4392 |
| v. | ) | |
| | ) | |
| Thomas W. Wolf, Governor of Pennsylvania | ) | |
| Pedro Cortes, Secretary of State of | ) | |
| Pennsylvania, and Jonathan Marks, | ) | |
| Commissioner of the Bureau of Elections, | ) | |
| in their official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

**LEGISLATIVE DEFENDANTS' STATEMENT OF FACTS ON WHICH EXECUTIVE
BRANCH DEFENDANTS AND PLAINTIFFS DO NOT AGREE TO STIPULATE**

1. It was mathematically impossible to avoid pairing two incumbent Congressmen/women in the same district in Pennsylvania's 2011 Congressional districting map (the "2011 Plan") unless one or more incumbent Congressmen/women declined to seek re-election.

2. Assuming all incumbents sought re-election, there had to be at least one Congressional district that contained two incumbent Congressmen/women.

3. Pennsylvania's division into Congressional districts proceeds through the Commonwealth's traditional legislative process.

4. The joint House and Senate State Government Committees held hearings at three locations across the Commonwealth of Pennsylvania before SB 1249 or any other Congressional redistricting plan was developed or introduced to Pennsylvania's General Assembly. (#95, Intervenor Michael C. Turzai's Amended Objections and Responses).

5. The Pennsylvania House of Representatives passed Senate Bill 1249 on December 20, 2011 by a margin of 136 to 61 with broad bipartisan support—36 members (40%) of the Democratic Caucus voted in favor of passage.

(http://www.legis.state.pa.us/CFDOCS/Legis/RC/Public/rc_view_action2.cfm?sess_yr=2011&sess_ind=0&rc_body=H&rc_nbr=1039; see also http://www.politicspa.com/redistricting-vote-who-crossed-party-lines-and-why/30258/).

6. There is currently one vacancy in Pennsylvania's Congressional delegation, and this vacancy is scheduled to be filled by special election to be held on March 18, 2017.

7. No Plaintiff has not been prevented from registering to vote in Pennsylvania since the 2011 Plan became law.

8. Most Plaintiffs have voted in every Congressional general election since the 2011 Plan was enacted.

9. Most Plaintiffs have voted for the Democratic Congressional candidate in each of the last five Congressional general elections, but several Plaintiffs have voted for Republican candidates in recent Congressional elections.

10. A Democratic candidate and a Republican candidate have appeared on the ballot for nearly all of the Congressional districts in which Plaintiffs reside for every Congressional general election held since the 2011 Plan was enacted.

11. No Plaintiff has been prevented from expressing or communicating their views to their elected Congressmen/women since the 2011 Plan became law.

12. No Plaintiff has been prohibited from speaking in opposition to the views and/or actions of their Congressmen/women since the 2011 Plan became law.

13. No Plaintiff has been told by any Congressional office that constituent services are provided or denied on the basis of partisan affiliations since the 2011 Plan became law.

14. Plaintiffs admit that the United States Constitution does not guarantee the right to have the candidate of one's choice win a given election.

15. Plaintiff Louis Agre suffered no individualized harm as a result of the 2011 plan.

16. Plaintiff Agre testified that he has regularly communicated with his Representative in Congress, and is generally pleased with the representation he has received.

17. Plaintiff Agre is frustrated that the political system has not addressed taxes, healthcare and gun control in a way that is consistent with his political beliefs.

18. Plaintiff Agre believes he was harmed because he does not live in a competitive district and this forces people into extremes. *Id*. at 59:5-60:23, 62:13-63:14.

2

19. Plaintiff Agre believes he was harmed because healthcare is more expensive, gun control legislation has not been passed, and the "tax system is just nuts." *Id*. at 61:2-62:12; *see also* 68:3-14; 83:1-8.

20. Plaintiff Agre does not know how the shape of his district was changed as a result of the 2011 Plan. *Id*. at 64:20-65:3, 72:4-12.

21. Plaintiff Agre wishes his representatives would have voted differently on some issues. *Id*. at 84-7.

22. Plaintiff Agre believes his vote is "weakened" and "diluted" "because it takes 50,000 more votes to elect a democrat in Pennsylvania." *Id*. at 86:2-15.

23. Plaintiff Agre has not been prevented from making contributions to political candidates and committees. He has made numerous contributions to both Republicans and Democrats. *See e.g.*

24. Plaintiff William Ewing does not believe that congressmen Evans and Fattah have harmed his rights. Dep. of Ewing at 86:22-87:2.

25. Plaintiff Ewing thinks he was harmed by not having a "meaningful choice" of who to vote for. *Id*. at 87:4-18; 88:3-13; 109:11-110:21.

26. Plaintiff Ewing thinks congressman get "lazy because they don't have to worry about meaningful opposition." *Id*. at 87:4-18.

27. Plaintiff William Ewing thinks that citizens are harmed "in general" because "the representation in the state and other states is not – doesn't accurately reflect the voting patterns of the population." *Id*. at 88:19-23.

28. Plaintiff Ewing has not been prevented from making contributions to political candidates and committees. Ewing Dep. Tr. 27-28 (11/14/17). He has made numerous contributions to Independents, Republicans, and Democrats. *See e.g.*, http://docquery.fec.gov/cgi-bin/fecimg/?15020165493; http://docquery.fec.gov/cgi- bin/fecimg/?26020013233; https://www.campaignfinanceonline.pa.gov/Pages/ShowReport.aspx?ReportID=22018&isStatement=0&is24Hour=0.

29. Plaintiff Ewing testified that even though he has generally supported Democratic politicians, such as Congressman Fattah, he is concerned that he has no meaningful choice in Congressional elections.

30. Plaintiff Rayman Solomon does not believe he has been harmed by having Mr. Evans represent him in Congress. *Id*. at 62:22-63:9.

31. Plaintiff Solomon does not think he suffered any harm by the shape of his district other than that his district is "no longer competitive." *Id*. at 76:6-78:9.

3

32. Plaintiff Rayman Solomon has not been prevented from making contributions to political candidates and committees and has made numerous contributions to candidates.

33. Plaintiff Floyd Montgomery admits that being represented by a Republican congressman does not violate his rights. Dep. of Floyd Montgomery at 37.

34. Plaintiff Montgomery believes that his rights have been violated because his voting has lost some "fairness." *Id.* at 36-37.

35. Plaintiff Montgomery has not been prevented from making contributions to political candidates and committees and has made numerous contributions to political candidates and committees.

36. Plaintiff Joy Montgomery has never been harmed by being prevented from registering to vote or voting. Dep. of Joy Montgomery at 8-9.

37. Plaintiff Montgomery admits that the 2011 Congressional map did not stop her from voting for the candidate of her choice, but only stopped her choice from winning. *Id.* at 29.

38. Plaintiff Montgomery has not been prevented from making contributions to political candidates or committees. Dep. of Joy Montgomery at 31.

39. Plaintiff Ani Diakatos believes that she is harmed by having Robert Brady as a congressman because Congressman Brady is a Philadelphia resident and Diakatos lives in Delaware County. Dep. of Diakatos at 78-79.

40. Plaintiff Diakatos believes that she is harmed because Congressman Brady does not come and meet his constituency in Delaware County. *Id.* at 79-81.

41. Plaintiff Diakatos cannot identify any specific legislation that Congressman Brady has voted for that has harmed her and has agreed that Congressman Brady tends to vote in a manner that is aligned with how she would prefer her congressperson to vote. *Id.* at 79-80.

42. Plaintiff Diakatos believes that she has been harmed to the extent that there was a change in her congressional district in 2011, but does not know whether her congressional district actually changed shapes in the 2011 plan. *Id.* at 94.

43. Plaintiff Burychka does not believe that he has been harmed by being represented by Congressman Brendan Boyle. Dep. of Burychka at 58.

44. Plaintiff Burychka believes that he is harmed because safe congressional districts have impeded legislation from passing quickly through congress and prevented honest and open political debate in the marketplace of ideas. *Id.* at 60-61.

4

45. Plaintiff Burychka believes that he is harmed because of Congressman Boyle does not have to listen to viewpoints of Republican members of congress and Senators, despite the fact that Plaintiff Burychka is on the same "side of the political aisle" as Congressman Boyle. *Id*. at 59-62.

46. Plaintiff Burychka does not know if the shape of his congressional district changed in 2005 or if he was harmed by any such change because, at that time, he had no idea about the shapes of congressional districts. *Id*. at 74.

47. Plaintiff James T. Davis believes he has been harmed because he is represented by a Republican who he disagrees with on the issues. Dep. of Davis at 27:10-19.

48. Plaintiff Davis does not believe the shape of his district has harmed him personally. *Id*. at 37:1-4. However, he does think that it has harmed voters (other than him) because it has made them more apathetic,. *Id*. at 37:1-16.

49. Plaintiff James T. Davis feels the harm extending from the current drawing of districts is that they were created to "protect people." *Id*. at 37:19-39:4, 40:7-21.

50. Plaintiff James T. Davis disagrees with his current congressman, Bill Shuster, but does not "know that it has anything to do with the congressional district." *Id*. at 42:3-17, 43:6-20.

51. Plaintiff Douglas Graham suffered no individualized harm as a result of the 2011 Plan.

52. Plaintiff Graham does not recall attempting to communicate with his Congressional Representative regarding any issues or constituent service matters.  (D. Graham Dep. at 22-24).

53. Plaintiff Graham believes his Congressional district—the 14th Congressional District—is fairly drawn. (D. Graham Dep. at 27, 29-30).

54. Plaintiff Graham believes his Congressional district is compact.  (D. Graham Dep. at 30).

55. Plaintiff Graham does not believe his Congressional district could be redrawn in a fashion to materially change its partisan composition.  (D. Graham Dep. at 30-31).

56. Plaintiff Graham believes his Congressional representative is doing a good job for his constituency.  (D. Graham Dep. at 29).

57. The shape of Plaintiff Graham's Congressional district has not caused him any harm.  (D. Graham Dep. at 32-33).

58. Plaintiff Marina Kats suffered no individualized harm as a result of the 2011 Plan.

59. Plaintiff Kats claims only that "gerrymandering is affecting the way the election works, not [her] voting rights." (M. Kats Dep. at 18).

60. Plaintiff Kats believes that having a Democrat Congressional Representative harms her only to the extent that Democrats do not reflect her views as a Republican. (M. Kats Dep. at 16, 26-27).

61. Plaintiff Kats has never attempted to communicate with re Congressional Representative on any issues or constituent service matters. (M. Kats Dep. at 24).

62. Plaintiff Kats believes fair representation requires a Congressional district to have a 50/50 split between Republicans and Democrats. (M. Kats Dep. at 28).

63. Plaintiff Shawndra Holmberg suffered no individualized harm as a result of the 2011 Plan.

64. Plaintiff Holmberg believes that she has been harmed because her Congressional Representative and "all of the state legislators" do not "listen[] to all of their constituents." (S. Holmberg Dep. at 17).

65. Plaintiff Leigh-Ann Congdon suffered no individualized harm as a result of the 2011 Plan.

66. Plaintiff Congdon does not believe the shape of her Congressional district has caused her any harm. (L. Congdon Dep. at 22).

67. Plaintiff Congdon has not communicated with her Congressional Representative regarding any issues or constituent service matters. (L. Congdon Dep. at 20).

68. Plaintiff Congdon believes the 2011 Plan is unfair when considered on a statewide basis. (L. Congdon Dep. at 32).

69. Plaintiff Barbara Shah suffered no individualized harm as a result of the 2011 Plan.

70. Plaintiff Shah does not recall attempting to contact her Congressional Representative regarding any issues or constituent service matters. (B. Shah Dep. at 32).

71. Plaintiff Shah believes she has harmed because her Congressional Representative does not support her views on gun control and healthcare. (B. Shah Dep. at 35).

72. Plaintiffs admit that they are alleging "statewide harm." Dep. of Floyd Montgomery at 29.

73. The Speaker has not worked with or had any involvement with REDMAP.

74. The Speaker has not worked with or had any involvement with the State Government Leadership Foundation ("SGLF").

75. The Speaker did not contribute money to SGLF in 2011.

76. The Speaker did not participate in a meeting at the Harrisburg Hilton that is alleged to have been in connection with the drawing of new Congressional district boundaries after the 2010 U.S. census (the "2011 Meeting").

77. PPT Scarnati is not familiar with the work of the SGLF.

78. PPT Scarnati did not contribute money to SGLF in 2011.

79. PPT Scarnati did not request assistance from SGLF in connection with the 2011 Plan.

80. PPT Scarnati is not familiar with REDMAP, and has never provided any assistance or support for REDMAP.

81. The alleged 2011 meeting at the Harrisburg Hilton was not held for purposes of drawing new Congressional boundaries, and the meeting occurred before the Census Bureau released the Pennsylvania Census Data.

82. Senator Scarnati recalls the meeting lasted approximately 30 minutes, and although redistricting may have been discussed in generalities, no specific Congressional district plans were discussed.

83. In an article posted December 13, 2011 in the Daily Times News, the Speaker is quoted as follows: "from a compactness, community interest and contiguity perspective we haven't seen a map really this positive, I would say, in some time. When you look at it, there's no issues with respect to gerrymandering in the way that these districts are drawn."

84. This same article indicates that an unnamed Republican or Republicans told the newspaper that the map was intended to protect the 12 Republican incumbents. The article does not quote either PPT Scarnati or Speaker Turzai on this point and, in fact, does not quote any source. (article posted December 13, 2011 in the Daily Times News).

85. The 2011 Plan splits 28 of Pennsylvania's 67 counties, compared to the 2002 Congressional Map that split 29 counties. (http://www.redistricting.state.pa.us/Congressional-Redistricting.cfm; http://www.redistricting.state.pa.us/Resources/GISData/Districts/Congressional/1991/PDF/PennsylvaniaCongressionalDistricts1992.pdf; http://www.legis.state.pa.us/WU01/LI/LI/US/HTM/2002/0/0034..HTM; http://www.legis.state.pa.us/WU01/LI/LI/US/HTM/2011/0/0131..HTM).

86. The 2011 Plan splits 68 of Pennsylvania's municipalities, while the 2002 Congressional Map split 94 municipalities. (http://www.redistricting.state.pa.us/Congressional-Redistricting.cfm; http://www.redistricting.state.pa.us/Resources/GISData/Districts/Congressional/1991/PDF/PennsylvaniaCongressionalDistricts1992.pdf; http://www.legis.state.pa.us/WU01/LI/LI/US/HTM/2002/0/0034..HTM; http://www.legis.state.pa.us/WU01/LI/LI/US/HTM/2011/0/0131..HTM).

87. The 2011 Plan splits 48 of Pennsylvania's wards, while the 2002 Congressional Map split 51 wards. (http://www.redistricting.state.pa.us/Congressional- Redistricting.cfm; http://www.redistricting.state.pa.us/Resources/GISData/Districts/Congressional/1991/PDF/PennsylvaniaCongressionalDistricts1992.pdf; http://www.legis.state.pa.us/WU01/LI/LI/US/HTM/2002/0/0034..HTM; http://www.legis.state.pa.us/WU01/LI/LI/US/HTM/2011/0/0131..HTM).

88. The 2011 Plan splits 19 of Pennsylvania's precincts, while the 2002 Congressional Map also split 19 precincts. (http://www.redistricting.state.pa.us/Congressional-Redistricting.cfm; http://www.redistricting.state.pa.us/Resources/GISData/Districts/Congressional/1991/PDF/PennsylvaniaCongressionalDistricts1992.pdf; http://www.legis.state.pa.us/WU01/LI/LI/US/HTM/2002/0/0034..HTM; http://www.legis.state.pa.us/WU01/LI/LI/US/HTM/2011/0/0131..HTM).

89. Pennsylvania has a history of split ticket voting. As the Supreme Court of Pennsylvania found in 2002, registered Pennsylvania Democrats "frequently split their votes among candidates of various parties and cross-over to vote for Republican candidates." *Erfer v. Commonwealth*, 794 A.2d 325, 349-50 (Pa. 2002).

90. Similarly, registered Pennsylvania Republicans "frequently split their votes among the candidates of various parties and "cross-over" to vote for Democrat candidates." *Erfer*, 794 A.2d at 350.

91. Similarly, registered Pennsylvania Republicans "frequently split their votes among the candidates of various parties and "cross-over" to vote for Democrat candidates." *Erfer*, 794 A.2d at 350.

92. Democratic State Representative Mike Gerber's home precinct is reported to be one of the municipal splits in the 2011 Plan to keep it inside the Congressional district held by Democratic Representative Allyson Schwartz in the Philadelphia area. (http://www.politicspa.com/redistricting-vote-who-crossed-party-lines-and-why/30258/).

93. Democratic Congressman Mike Doyle from Allegheny County was reported to have supported the 2011 Plan, and ten Pennsylvania House Democrats from Allegheny County voted in favor of the 2011 Plan. (http://www.politicspa.com/redistricting-vote- who-crossed-party-lines-and-why/30258/).

94. Democratic Congressman Jason Altmire from Allegheny County is reported to have written letters voicing support for the 2011 Plan to members of Pennsylvania's General Assembly, and 10 Democrats from the Pennsylvania House of Representatives from Allegheny County voted in favor of the 2011 Plan. (http://www.politicspa.com/redistricting-vote-who-crossed-party-lines-and-why/30258/).

95. Democratic Congressman Tim Holden is reported to have lobbied in favor of the 2011 Plan, and ten Democratic members of the Pennsylvania House of Representatives reported as his allies voted in favor of the 2011 Plan. (http://www.politicspa.com/redistricting-vote-who-crossed-party-lines-and-why/30258/).

96. Based on this reporting, at least four of then seven incumbent Democratic Pennsylvania members of Congress are publicly reported to have supported the 2011 Plan. (http://www.politicspa.com/redistricting-vote-who-crossed-party-lines-and- why/30258/).

97. At least three members of Pennsylvania's Democratic Congressional delegation are reported to have supported Senate Bill 1249 by taking efforts to aid its passage through the Pennsylvania House of Representatives.

98. U.S. Representatives Bob Brady (D-PA-1), who was also serving as the Philadelphia Democratic City Committee Chairman and Michael F. Doyle (D-PA-14) called Democratic state House members and asked them to vote for Senate Bill 1249. (http://www.politicspa.com/redistricting-will-it-pass/30236/; http://www.politicspa.com/redistricting-vote-who-crossed-party-lines-and-why/30258/).

99. U.S. Representative Jason Altmire (D-PA-12) more openly supported Senate Bill 1249 by penning a letter to the Pennsylvania state House Democrats asking them to vote for it. (https://www.politico.com/blogs/david-catanese/2011/12/altmires-confidence- 108194; http://www.politicspa.com/altmire-to-harrisburg-dems-vote-for-gop- redistricting-plan/30243/; http://www.politicspa.com/redistricting-vote-who-crossed- party-lines-and-why/30258/).

100. Representative Altmire's letter read, in part, "I want to make clear that I believe all the western Pennsylvania districts, including the new 12th, are drawn in a fair and contiguous way." (*Id.*)

Dated:  November 29, 2017

Respectfully submitted,

 /s/ *Jason Torchinsky*
Jason Torchinsky
Shawn Sheehy
HOLTZMAN VOGEL JOSEFIAK TORCHINSKY PLLC
45 North Hill Drive, Suite 100
Warrenton, Virginia  20186
Phone: (540) 341-8808
Fax: (540) 341-8809
Email: jt@hvjt.law
ssheehy@hvjt.law

*Attorneys for Defendants*
*Senator Joseph B. Scarnati III and*
*Representative Michael C. Turzai*


 /s/ *Kathleen A. Gallagher*
Kathleen A. Gallagher
Carolyn Batz McGee
Jason R. McLean
Cipriani & Werner PC
650 Washington Road, Suite 700
Pittsburgh, Pennsylvania  15228
Phone: (412) 563-4978
Email: kgallagher@c-wlaw.com
cmcgee@c-wlaw.com
jrmclean@c-wlaw.com

*Attorneys for Defendant*
*Representative Michael C. Turzai*

 /s/ *Brian Paszamant*
Brian S. Paszamant
Jason A. Snyderman
John P. Wixted
Blank Rome LLP
One Logan Square
130 N. 18th Street
Philadelphia, Pennsylvania  19103
Phone: (215) 569-5791
Fax: (215) 569-5555
Email: paszamant@blankrome.com
snyderman@blankrome.com
jwixted@blankrome.com

*Attorneys for Defendant*
*Senator Joseph B. Scarnati III*