# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Louis Agre** *et al.*, | : |
| Plaintiffs, | : Civil Action No. 2:17-cv-4392 |
| v. | : |
| **Thomas W. Wolf** *et al.*, | : |
| Defendants. | : |

## LEGISLATIVE DEFENDANTS' OUTLINE OF ELEMENTS FOR PLAINTIFFS' PRIVILEGES AND IMMUNITIES CLAUSE AND FIRST AMENDMENT CLAIMS

As this Court held, "[t]he United States Supreme Court has never decided a so-called 'gerrymandering' case on Election Clause grounds." (*St. of Reasons for the Court's Decision*, ECF No. 83, at 1). In that order, the Court opted to provide Plaintiffs an "opportunity to present their evidence at trial" as to their Privileges and Immunities/Elections Clause claim. *Id.* The Court later directed the parties to brief "the elements Plaintiffs must prove to establish a violation of the Elections Clause and the First Amendment as alleged in in the Amended Complaint," along with the evidentiary standard and burden-shifting. (*Order of Nov. 21, 2017*, ECF No. 104, at ¶ 4). It is unclear what legal standards the Supreme Court might adopt for adjudicating claims of this nature. The Supreme Court may well find them legally insufficient as stated.

Legislative Defendants disagree with all premises of Plaintiffs' case, including the view that voters have standing to enforce rights under the Elections Clause, that the Elections Clause imposes limitations on state legislatures when redistricting, that a First Amendment claim has been stated on the pleadings, and that the claim is justiciable. (*Mot. to Dismiss Am. Compl.*, ECF No. 108-2, at 3-10). Without waiving these positions, Legislative Defendants offer the following views on the standards that should apply to Plaintiffs' purported claims.

To the extent—if at all—that Plaintiffs' claim will be viewed as raising justiciable or colorable legal claims, Legislative Defendants respectfully submit that the Supreme Court is likely to adjudicate them under "well developed and familiar" constitutional standards that apply to the claims of any other federal-court plaintiffs. *See Baker v. Carr*, 369 U.S. 224, 226 (1962). After all, "federal-court review of districting legislation represents a serious intrusion on the most vital of local functions." *Miller v. Johnson*, 515 U.S. 900, 916 (1995).

As to Article III standing, this principle requires proof of a "concrete and particularized harm" going well beyond "undifferentiated, generalized grievance[s] about the conduct of government." *Lance v. Coffman*, 549 U.S. 437, 442 (2007). Plaintiff's Privileges and Immunities Clause claim requires proof that the alleged right (here, the Elections Clause) "arise[s] out of the nature and essential character of the National government, the provisions of its Constitution, or its laws and treaties made in pursuance thereof" such that it falls within "the protection of Congress" under the Fourteenth Amendment's enforcement clause. *Slaughter-House Cases*, 83 U.S. [16 Wall.] 36, 37 (1872). Alternatively, to the extent Plaintiffs seek to present this claim under the *Anderson/Burdick* framework, well developed standards require a showing that the voting restriction places a "severe" burden on the right to vote, effectively denying the franchise outright. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). And, as to their First Amendment claim, Plaintiffs must demonstrate a "restraint[]" on expressive and associational rights, *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963), or retaliation "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (quotation marks omitted). Plaintiffs cannot succeed without meeting, at a minimum, these rigorous standards of proof.

**ARGUMENT**

Plaintiffs allege two counts under 42 U.S.C. § 1983: "Violation of Privileges and Immunities Clause" and "Violation of the First Amendment." (Am. Compl. at 10, 12). In addition to the merits of these claims, this case raises questions of Article III standing.

**A.    Standing**

As the Supreme Court made clear in *Lujan v. Defenders of Wildlife*, claims that are not differentiated from those of the general public do not grant any right to bring such grievances to federal court. 504 U.S. 555, 574-575 (1992). The elements of standing are an injury in fact, a connection between the harm complained of, and redressability. *Id.* at 560. Notably, "it is not enough that the party invoking the power of the court have a keen interest in the issue," *Hollingsworth v. Perry*, 133 S.Ct. 2652, 2659 (2013), or that the plaintiff be concerned "about the conduct of government." *Lance,* 549 U.S. at 442. Plaintiffs bear the burden of first proving they have a cognizable injury in fact, a hurdle nearly insurmountable in a statewide redistricting case because ofPlaintiffs' lack of differentiation from any other voter. *See, e.g., United States v. Hays*, 515 U.S. 737, 746 (1995) ("Only those citizens able to alleged injury as a direct result of them personally having been denied equal treatment may bring such a challenge….") (internal citation omitted).

Second, Plaintiffs bear the burden of proving that the Court can provide, as redress for their purported injury, the relief they request: that the Executive Branch draw the map for the General Assembly's "approval." But the process of redistricting in each State is left to the State's legislature and the accompanying legislative process. *See New York State Bd. of Elections v. Lopez Torres*, 552 U.S. 196, 204-206 (2008) (reversing grant of injunction mandating New York offer direct primary elections for judicial candidates, finding that whether a primary system gives

3

an individual a "fair shot" at winning an election is a legislative judgment and overruling that legislative judgment was error). In *Lopez-Torres*, the Court affirmed that mechanics of state election processes are precisely the types of decisions generally best left to legislative judgment.

### B. Enforcement of Rights Via § 1983

If Plaintiffs prove standing, the next question is whether the "right" they allege is enforceable under 42 U.S.C. § 1983. Plaintiffs bear the burden of showing "the violation of a federal right." *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 106 (1989). A "right" is narrow and does not include all "violations of federal law," only legal provisions conferring "rights, privileges, or immunities." *Id.* Plaintiffs must show that "the provision in question creates obligations binding on the governmental unit," that the alleged interests are not "too vague and amorphous" to be enforced by the judiciary, and that "the provision in question was intend[ed] to benefit the putative plaintiff." *Id.* (quotation marks omitted).

### C. Political Question Doctrine

Plaintiffs also bear the burden of showing that their claims involve "judicially enforceable rights." *Vieth v. Jubelirer*, 541 U.S. 267, 277 (2004) (opinion of Scalia, J.). The Supreme Court has set forth "six independent tests" to identify whether a question is justiciable:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Id.* at 277-78 (quoting *Baker*, 369 U.S. at 217). "These tests are probably listed in descending order of both importance and certainty," and there is "no doubt" of the "validity" of the required

showing that the claim presents "judicially discoverable and manageable standards." *Id.* at 278. As Legislative Defendants have previously noted, a majority of the Supreme Court has never been able to agree on an applicable standard by which to evaluate a partisan gerrymandering claim.

### D. Privileges and Immunities Clause

If Plaintiffs meet the threshold Article III and justiciability tests, they must then prove their claims on the merits. Plaintiffs' first claim is under the Privileges and Immunities Clause. The reach of that clause is "narrow." *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 755 (2010). Under this "high standard," Plaintiffs must show that the rights they seek to assert "'owe their existence to the Federal government, its National character, its Constitution, or its laws.'" *Id.* at 754–55 (quoting *The Slaughter-House Cases*, at 83 U.S. [16 Wall.] at 79). The character of the rights need to be sufficiently federal in character as to allow their enforcement by Congress under the Fourteenth Amendment. *The Slaughter-House Cases*, at 83 U.S. [16 Wall.] at 79.

The rights Plaintiffs seek to create are under the Elections Clause. (Am. Compl. ¶ 58). Courts have rejected the notion that the Elections Clause creates rights enforceable under the Privileges and Immunities Clause. *See, e.g., Pope v. Blue*, 809 F.Supp. 392, 399 (W.D.N.C. 1992) (finding no precedent to suggest that the Privileges or Immunities Clause "protects a citizen's right to live in a regularly shaped congressional district"), *aff'd*, 506 U.S. 801 (1992); *O'Lear v. Miller*, 222 F. Supp. 2d 850, 860 (E.D. Mich. 2002) (declining to find that Privileges or Immunities Clause protects a right "to fair representation or the right to an effective vote), *aff'd,* 537 U.S. 997 (2002). But even if Elections Clause rights were enforceable under the Privileges or Immunities clause, Plaintiffs must prove their case under the substantive standards of the Elections Clause.

5

The first step of the inquiry under the Elections Clause analysis is to ascertain whether the "powers" at issue are among those reserved to the states under the Tenth Amendment or if they are solely the result of an affirmative grant under the Elections Clause. *See U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 802-804 (1995). If the power is reserved to the states under the Tenth Amendment, then Plaintiffs would be required to identify some *affirmative* restriction in the U.S. Constitution on the use of those powers; on the other hand if the power is granted solely through the Elections Clause, then the Elections Clause may restrict the use of those powers to regulation of "Place, Time, and Manner" of elections. *See id.* at 804–08. Thus, to make out an Elections Clause case (rather than a violation of some *other* constitutional provision), Plaintiffs must show that the power to redistrict is granted to the state legislature solely under the Elections Clause and is not part of states' inherent authority. *But see Chapman v. Meier*, 420 U.S. 1, 27 (1975) ("reapportionment is primarily the duty and responsibility of the State through its legislature or other body.")

If Plaintiffs meet that first step, the second step is ascertaining whether the 2011 Plan is a "Time, Place, and Manner" regulation. While Plaintiffs in this case cite *U.S. Term Limits, Inc.,* that case primarily concerned the Qualifications Clause, and the Court concluded that the Elections Clause did not grant the state a license to override the Qualifications Clause by excluding a class of candidates. The Supreme Court has already clearly stated that redistricting maps and processes are within the province of the State Legislatures. *See Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, 135 S.Ct. 2652 at 2672 (2015) ("The dominant purpose of the Elections Clause the historical record bears out, is to empower Congress to override state election rules, not to restrict the way States enact legislation"). In one case Plaintiffs have cited, *Cook v. Gralike*, the Supreme Court struck down a state constitutional

6

provision that required its Congressional representatives to pledge support for a federal term limits amendment or else face a statement appearing on the ballot urging voters not to vote for that candidate. 531 U.S. 510, 514 (2001). The Supreme Court found that the statute violated the Elections Clause because the provision "bears no relation to the 'manner' of elections" and was solely "intended" to "handicap candidates for the United States Congress" and "to dictate electoral outcomes" in order to achieve term limits. *Id.* at 525 (quotation marks omitted).

Therefore, to prevail on their Privileges or Immunities Clause/Elections Clause claim, Plaintiffs must show that the 2011 Plan, taken as a whole, either (1) "add[s] to or alter[s] the qualifications specifically enumerated in the Constitution" for Congresspersons to obtain office and that this alteration was the legislature's "the sole purpose"; or (2) "bears no relation" to regulation of place, time, or manner of elections and served no other purpose but an "attempt[] to dictate electoral outcomes." On the other hand, the 2011 Plan must be held lawful if it falls within "the States['] 'broad power' to prescribe the procedural mechanisms for holding congressional elections." *Cook*, 531 U.S. at 523.

Plaintiffs bear a preponderance of the evidence burden on all these showings.

### E. The *Anderson-Burdick* Framework

At times, Plaintiffs suggest that they intend to invoke the *Anderson-Burdick* test in connection with their Privileges and Immunities Clause claim, (*Mem. in Opp. to Mot. to Dismiss Am. Compl.*, ECF No. 133, at 3-10), which courts use to test whether elections regulations unnecessarily and unjustifiably burden the right to vote. *See Burdick*, 504 U.S. at 434. As such a claim has been inadequately plead, Legislative Defendants do not consent to trial of this issue.

However, if the Court chooses to allow argument on this issue, the analysis would turn on "the extent to which a challenged regulation burdens First and Fourteenth Amendment rights."

7

*Id.* at 434. Plaintiffs first must show that "those rights are subjected to 'severe' restrictions." *Id.* To be "severe," the purported restriction would have to be as restrictive as bars to ballot access for political parties and candidates, *Anderson v. Celebrezze*, 460 U.S. 780, 787–89 (1983), or prohibitions on write-in voting. *Burdick*, 504 U.S. at 434–35. It would have to be proven *more* restrictive than voter qualifications, such as voter identification requirements, that may limit access to the polls. *Crawford v. Marion County Election Bd.*, 553 U.S. 181, 211–18 (2008).

If that showing is made, the burden would shift to the defense to show that the regulation is "narrowly drawn to advance a state interest of compelling importance." *Burdick*, 504 U.S. at 434. If not made, "the State's important regulatory interests are generally sufficient to justify" reasonable, nondiscriminatory voter regulations. *Id., quoting Anderson*, 460 U.S. at 788.

Notably, intent to obtain partisan advantage from a voting restriction does not itself amount to a burden on the right to vote and does not, independent of a showing of burden, satisfy Plaintiffs' burden at any phase of the inquiry. *Crawford*, 553 U.S. at 203–204. *See also Miller*, 515 U.S. at 916 (recognizing that "electoral districting is a most difficult subject for legislatures, and so the States must have discretion to exercise the political judgment necessary to balance competing interests").

### F. The First Amendment

Plaintiffs' second claim is under the First Amendment. Am Compl. at 12. First Amendment standards condemn classifications on grounds of expression or association only to "the extent [they] compel[] or restrain[] belief and association…." *Elrod v. Burns*, 427 U.S. 347, 357 (1976); *see also Vieth*, 541 U.S. at 314–15 (Kennedy, J.) ("The [First Amendment] inquiry…is whether political classifications were used to burden a group's representational rights.").

8

Under familiar First Amendment standards, Plaintiffs have two options to make out a claim. First, they may show that the state law amounts to a "restraint[]" on their freedom to speak or associate." *Bantam Books, Inc.*, 372 U.S. at 70. This requires either a showing that their views are, at minimum, "arguably prohibited," *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 303 (1979), or that they are being legally forced to, or prohibited from, association. *Cal. Democratic Party v. Jones*, 530 U.S. 567, 573 (2000); *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 214–17 (1986). Where no such burden is shown, the claim must fail. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 453 (2008). This standard does not incorporate a right to a "fair shot" at success at the polls. *Lopez Torres*, 552 U.S. at 205–206.

Second, they may show that the state law amounts to unconstitutional retaliation for speech or association. *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006). The elements of First Amendment retaliation are: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action. *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). Examples of retaliation sufficient to deter a person of ordinary firmness from exercising his constitutional rights include a "prolonged and organized campaign of harassment" by law enforcement officers, *see, e.g.*, *Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005), police "intimidation tactics," *see, e.g.*, *Keenan v. Tejeda*, 290 F.3d 252, 259 (5th Cir. 2002), criminal prosecution, *see Bruner v. Baker*, 506 F.3d 1021, 1030 (10th Cir. 2007), or adverse employment action. *See, e.g.*, *Hill v. City of Pine Bluff, Ark.*, 696 F.3d 709, 715 (8th Cir. 2012). Falling short of that, no cognizable claim exists. *See Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 (2d Cir. 2006) (finding no deprivation of First Amendment rights where university professor was denied "emeritus" status because the "benefits

9

of such status…carry little or no value and their deprivation therefore may be classified as de minimis"); *Mezibov v. Allen*, 411 F.3d 712, 721–23 (6th Cir. 2005) (finding no First Amendment deprivation where allegedly defamatory statements by prosecutor would not deter a "defense attorney of ordinary firmness" from continuing to defend his client).

If Plaintiffs meet these three elements, the burden shifts to the defense to show that the same action would have been taken anyway. *Dougherty v. Sch. Dist. of Philadelphia*, 772 F.3d 979, 986 (3d Cir. 2014); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). If that showing is made, Plaintiffs "no longer fairly could attribute the injury complained of to improper consideration of a discriminatory purpose." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 271 (1977). If the defense meets its burden, the burden then would shifts back to Plaintiffs to show that the stated reasons for the action are pretexts. *See Feldman v. Philadelphia Hous. Auth.*, 43 F.3d 823, 831 (3d Cir. 1994).

## CONCLUSION

The judicial power of Article III, § 1, is "not *whatever* judges choose to do." *Vieth*, 541 U.S. at 278. The Court should instead apply "well developed and familiar" constitutional standards consistent with Supreme Court case law. *See Baker,* 369 U.S. at 227. Those standards require, at bare minimum, the showing described above. For reasons stated elsewhere, Legislative Defendants request that this case be dismissed immediately. If the Court entertains a trial, Legislative Defendants respectfully submit that the above-described standards are the minimum elements Plaintiffs must be required to show.

Dated: November 30, 2017					Respectfully submitted,

| **BLANK ROME LLP** | **CIPRIANI & WERNER PC** |
|---|---|
| /s/ *Brian S. Paszamant* | /s/ *Kathleen A. Gallagher* |
| BRIAN S. PASZAMANT | KATHLEEN A. GALLAGHER |
| JASON A. SNYDERMAN | CAROLYN BATZ MCGEE |
| JOHN P. WIXTED | 650 Washington Road, Suite 700 |
| One Logan Square | Pittsburgh, Pennsylvania 15228 |
| 130 N. 18th Street | Phone: 412-563-4978 |
| Philadelphia, Pennsylvania 19103 | Email: kgallagher@c-wlaw.com |
| Phone: 215-569-5791 | cmcgee@c-wlaw.com |
| Facsimile: 215-832-5791 | |
| Email: paszamant@blankrome.com | *Attorneys for Legislative Defendant* |
| snyderman@blankrome.com | *Representative Michael Turzai* |
| jwixted@blankrome.com | |
| | |
| *Attorneys for Legislative Defendant Senator Joseph Scarnati III* | |
| **HOLTZMAN VOGEL JOSEFIAK TORCHINSKY PLLC** | **BAKER & HOSTETLER LLP** |
| /s/ *Jason Torchinsky* | /s/ *Patrick T. Lewis* |
| JASON TORCHINSKY (admitted *Pro Hac Vice*) | PATRICK T. LEWIS |
| SHAWN SHEEHY (admitted *Pro Hac Vice*) | (admitted *Pro Hac Vice*) |
| PHILLIP M GORDON (admitted *Pro Hac Vice*) | Key Tower |
| 45 North Hill Drive, Suite 100 | 127 Public Square |
| Warrenton, Virginia 20186 | Suite 2000 |
| Phone: 540-341-8808 | Cleveland, OH 441144114 |
| Facsimile: 540-341-8809 | Phone: 216-621-0200 |
| Email: jtorchinsky@hvjt.law | Email: plewis@bakerlaw.com |
| ssheehy@hvjt.law | |
| | *Attorney for Legislative Defendant Representative Michael Turzai* |
| *Attorneys for Legislative Defendants Senator Joseph Scarnati III and Representative Michael Turzai* | |

# CERTIFICATE OF SERVICE

I, Kathleen A. Gallagher, hereby, certify that on this 30th day of November, 2017, I caused a true and correct copy of the foregoing *Legislative Defendants' Outline of Elements for Plaintiffs' Privileges and Immunities Clause and First Amendment Claims* to be served on all counsel of record, via the Court's ECF Filing System.

Respectfully submitted,

Dated: November 30, 2017

   */s/ Kathleen A. Gallagher*
KATHLEEN A. GALLAGHER

**CIPRIANI & WERNER, P.C.**
650 Washington Road, Suite 700
Pittsburgh, PA 15228
(412) 563-2500 (Telephone)
(412) 563-2080 (Facsimile